FILED

'13 OCT 24 AM 10: 37

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL F. TERRAZAS; NORMA Y. TERRAZAS,<br><br>                      Plaintiffs,<br>vs.<br><br>WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHWEST, NA FKA WACHOVIA MORTGAGE BANK FSB; COLFIN AI-CA4, LLC AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>                      Defendants. | CASE NO. 13-cv-00133-BEN-MDD<br><br>**ORDER**<br><br>**(1) GRANTING DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO DISMISS; AND**<br><br>**(2) GRANTING DEFENDANT COLFIN AI-CA 4 LLC'S MOTION TO DISMISS**<br><br>[Docket Nos. 14, 16] |

## I. INTRODUCTION

Defendants Wells Fargo, N.A. ("Wells Fargo") and Colfin AI-CA 4 ("Colfin"), LLC seek to dismiss the claims of Plaintiffs Angel F. Terrazas and Norma Y. Terrazas arising from the loan servicing and foreclosure of a Chula Vista property. This Court considered Wells Fargo's Motion to Dismiss (Docket No. 14) and Colfin's Motion to Dismiss (Docket No. 16). For the reasons discussed below, this Court **GRANTS** Colfin's Motion to Dismiss with prejudice, and **GRANTS** Wells Fargo's Motion to Dismiss with prejudice as to Claims One through Three and Five through Nine, and

without prejudice as to Claim Four.

## II. BACKGROUND

This case involves property located at 1215 Pinehurst Road, Chula Vista, California (the "Property). First Am. Compl. at ¶ 8. Plaintiffs allege that in October 2005, they obtained title to the Property by grant deed. FAC at ¶ 26. Parties agree that in November 2005, Plaintiffs executed a Mortgage Note and Deed of Trust in favor of World Savings Bank, FSB ("World Savings"). FAC at ¶ 27. The Note was secured by a Deed of Trust recorded against the Chula Vista property. RJN Ex. B. Plaintiffs allege that about December 2005, World Savings Bank sold and transferred the Note and Deed of Trust. FAC at ¶ 29. Although the beneficiary is "presently unknown," Plaintiffs assert that it was not Wells Fargo. FAC at ¶ 29-30, 39. Wells Fargo later merged with the successors of World Savings Bank. RJN Ex. A. Wells Fargo mailed, or caused to be mailed, billing statements to Plaintiffs that asserted a right to collect mortgage payments. FAC at ¶ 50. In September 2012, a "Notice of Default and Election to Sell Under Deed of Trust" was recorded on the property by an agent for Wells Fargo, whereby Wells Fargo sought payment of $33,584.30. FAC at ¶ 51; RJN Ex. C. Plaintiffs did not cure the default, and Wells Fargo caused its agent to send Plaintiffs a "Notice of Trustee Sale" on December 26, 2012. RJN Ex. D.

Plaintiffs commenced this lawsuit on January 16, 2013 by filing a complaint asserting six causes of action. (Docket No. 1). On February 1, 2013 this Court denied Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Docket No. 6). Colfin purchased the property at the foreclosure sale on February 19, 2013. FAC at ¶ 82.

On March 5, 2013, Plaintiffs filed the First Amended Complaint (FAC) against Wells Fargo and Colfin. (Docket No. 11). The FAC asserts nine causes of action: (1) Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2201; (2) Quasi Contract; (3) Negligence; (4) Violation of 15 U.S.C. § 1692 *et seq.*; (5) Violation of California Business and Professions Code § 17200 *et seq.*; (6) Accounting; (7) Cancellation of

Instruments; (8) Quiet Title; (9) Set Aside Trustee's Sale. Plaintiffs only asserts Claims One, Seven, Eight, and Nine against Colfin. FAC.

Wells Fargo filed a Motion to Dismiss the FAC on March 19, 2013. Colfin filed a Motion to Dismiss the FAC on April 12, 2013.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

### IV. DISCUSSION

#### A. Judicial Notice

Wells Fargo has asked this court to take judicial notice of two categories of documents. (Docket No. 8). Exhibit A is a set of documents reflecting official acts or records of the federal executive branch regarding the status of Wells Fargo and its predecessors as federally chartered banks. Wells Fargo also included documents alleged to be true and correct copies of official public records of the San Diego County Recorder's Office relating to the Property, including the Deed of Trust dated November 21, 2005 (Exhibit B), the Notice of Default and Election to Sell Under Deed of Trust, dated September 26, 2012 (Exhibit C), and the Notice of Trustee Sale dated December 24, 2012 (Exhibit D).

Under Federal Rules of Evidence 201(b)(2), a court may judicial notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Matters of

public record found outside the pleadings are proper subjects for judicial notice on a motion to dismiss. *MGIC Indem. Corp v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Plaintiffs have accepted Exhibit B as offered. However, in their Opposition to Wells Fargo's Motion to Dismiss, Plaintiffs claim that Exhibits A, C, and D are not properly the subject of judicial notice. Opp'n 12.

Plaintiffs contend that Exhibit A consists of private contracts not subject to judicial notice. Opp'n 13. Judicial notice has repeatedly been taken of official acts and records of the United States, including documents demonstrating corporate succession. *E.g., Hite v. Wachovia Mortgage*, No. 09-cv-2884, 2010 U.S. Dist. LEXIS 57732 at *6-7 (E.D. Cal. June 10, 2010) (taking judicial notice of documents demonstrating Wachovia's status as a federal savings bank, its change in name, and its status as a division of Wells Fargo). This Court therefore accepts Exhibit A.

Plaintiffs allege that Exhibits C and D have been fraudulently created and recorded by Wells Fargo. Opp'n at 13. A court may take judicial notice of undisputed matters of public record, but may not take judicial notice of disputed facts stated in public records. *See Lee v. City of Los Angeles*, 250 F.3d 668, 668-690 (9th Cir. 2001). This court therefore takes notice of the fact that Exhibits C and D were recorded with the San Diego County Recorder's Office, but does not take judicial notice of the disputed facts asserted within. *C.f. Lee*, 250 F.3d at 690 (finding that it was proper to take judicial notice of the fact of a extradition hearing, that a waiver had been signed, and that the appellant had purportedly waived his right to challenge extradition, but could not take judicial notice that the waiver was valid.).

This Court determines that all of the submitted documents are proper subjects for judicial notice, with Exhibits C and D accepted for the purposes stated above.

**B. The State Law Claims are Preempted by the Home Owners' Loan Act**

Wells Fargo argues that Plaintiffs' state law claims are preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. §§ 1461 *et seq*, and regulations promulgated by the Office of Thrift Supervision ("OTS") pursuant to that statute.

Colfin asserts the same with respect to Claims One, Seven, Eight and Nine.[1]

As explained by the Ninth Circuit in *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008), Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." *Id.* (citing *Bank of Am v. City and Cnty of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002)). The statue was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide "best practices." *Id.* (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-61 (1982)).

The Ninth Circuit has found that HOLA and the agency regulations issued pursuant to HOLA are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Id.* (citing *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd* 445 U.S. 921). "Because there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Id.* (citing *Bank of Am.*, 309 F.3d at 559 (internal quotation marks omitted in *Silvas*)).

> *i. HOLA and OTS Regulations Preempt State Laws Relating to Loans Originated by Federal Savings Associations.*

At the time of the loan origination, World Savings Bank was a federal savings bank, regulated by OTS. RJN Ex. A. HOLA governed the operations of a "federal savings association." 12 U.S.C. § 1464. A federally chartered savings bank is included within the definition of a "federal savings association." 12 U.S.C. § 1462(3); 12 C.F.R. § 541.11.

---

[1] Since Plaintiffs obtained their loan, the statutory and regulatory structure has been altered. Congress has passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, P.L. 111-203 (2010), and new preemption regulations have been issued. Plaintiffs concede that these subsequent changes are "not relevant." Opp'n at 8, n.3.

World Savings Bank subsequently became Wachovia, and later merged into Wells Fargo, N.A., which is not a federal savings bank. RJN Ex. A. Courts have allowed successor entities not subject to HOLA to assert HOLA preemption where the loan at issue originated with a federal savings bank. *E.g., Osorio v. Wachovia Mortg. F.S.B.*, No. 12-cv-663, 2012 WL 1610110 at *3 (S.D. Cal May 8, 2012); *Castillo v. Wachovia Mortg.*, No. C-12-101, 2012 WL 1213296, at *4-5 (N.D. Cal. April 11, 2012); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010).

HOLA and the related regulations have also been applied to conduct by a successor entity that occurs *after* a federal savings bank merges with a national bank, where the loan was originated with a federal savings bank *before* the merger. *Castillo* 2012 WL 1213296, at *4-5; *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).

### ii. OTS Regulations Preempted State Laws

OTS promulgated a preemption regulation, 12 C.F.R. § 560.2. The regulation reads, in relevant part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.

In § 560.2(b), the regulation provides a list of "[i]llustrative examples" of state laws preempted by the regulation. In relevant part:

> the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
> . . .
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> . . .

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b) (4),(9), and (10).

The regulation also lists certain types of state laws that are not preempted "to the extent they only incidentally affect the lending operations of federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." § 560.2(c). Those state laws include contract and commercial law, real property law, and tort law. *Id.*

Ninth Circuit precedent directs courts to use the analysis created by OTS to determine whether a state law is preempted by HOLA and OTS regulations. *Silvas*, 514 F.3d at 1005-06 (quoting the OTS analytical framework and explicitly applying the directed preemption analysis).

Specifically, the Ninth Circuit called attention to OTS's direction that:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996)).

### iii. Plaintiffs' Claims are Preempted under HOLA

Application of the required analysis requires this Court to dismiss Plaintiffs's state law claims as preempted by federal law.

///

///

### a. Claims Predicated on the Assertion that Wells Fargo is not the true Holder of the Note Fall Within the Scope of HOLA Preemption

Under Ninth Circuit precedent, this Court must first look to see whether state law, *as applied*, is a type of state law contemplated in the list in § 560.2(b). *Silvas*, 514 F.3d at 1006. If so, the preemption analysis ends. *Id.*

Plaintiffs contend that their claims are not preempted by HOLA because they do not relate to acts or actions undertaken by the original Lender, and involve acts and actions that they allege occurred after Wells Fargo's predecessor in interest (World Savings Bank) had terminated all privity of contract with Plaintiffs. Opp'n 11. Plaintiffs contend that their claims are not based on the loan transaction, and are therefore not preempted. *Id.*

This Court disagrees. Although Plaintiffs assert nine separate causes of action, their claims are all founded upon the allegation that Wells Fargo is not the true owner of the Note or Deed of Trust, and therefore had no authority to either service the loan or to foreclose upon the Plaintiffs' home. *E.g.*, FAC at 19. Plaintiffs' claims therefore relate to the actions of the originator of the loan and its successor entities in "servicing" the mortgage. As such, Plaintiffs' state law claims fall squarely within the scope of § 560.2(b)(10), which covers "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."

Other courts in this circuit have found that HOLA preempts state law claims where a plaintiff alleges that the defendant did not have authority to close and that the true beneficiary is unknown. *Castillo*, 2012 WL 1213296 at *1, 15 (finding that where plaintiff alleged that the defendant had no proof of their authority or standing to foreclose and "the true beneficiary is unknown" "[s]uch claims, based on Defendants' alleged failure to follow proper procedures in maintaining and servicing a loan and failure to demonstrate their authority to foreclose, have consistently been determined to fall under the umbrella of claims preempted by HOLA."); *Unlu v. Wells Fargo Bank N.A.*, Case No. 5:10-CV-5422 EJD, 2011 WL 6141036, at *1 (N.D. Cal. Dec. 9, 2011)

(state law claims "that the Notice of Default was recorded by an entity that was not authorized to do so" were preempted by HOLA because they "are based entirely on the origination, processing and servicing of Plaintiffs' mortgage loan"); *Ahmed v. Wells Fargo Bank & Co.*, No. C 11-436, 2011 WL 1751415, at *3-4 (N.D. Cal. May 9, 2011) (claims, including assertion that defendants had "no right or legal authority to foreclose on the subject property as Defendants are not legal owners of the note and are not the lawful trustee . . . are predicated upon alleged improprieties in the foreclosure procedure used by defendants and therefore affect lending because they involve the 'processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages,' as defined in 12 C.F.R. § 560.2(b)(10).").

Claims of misconduct arising from the transfer of negotiable instruments are preempted under the "sale or purchase" provision in § 560.2(10). *Hague v. Wells Fargo Bank, N.A.*, C11-02366 TEH, 2011 WL 6055759, at *4 (N.D. Cal. Dec. 6, 2011) (citing *Winding v. Cal–Western Reconveyance Corp.*, No. CV F 10-0041, 2011 WL 221321, at *11–12 (E.D.Cal. Jan. 24, 2011)).

As applied, the state causes of action raised by Plaintiffs fall within the scope of § 560.2(b), and the analysis ends there.

Plaintiffs' claims in quasi-contract are based upon the allegation that Wells Fargo had no authority to collect payments, and therefore was unjustly enriched. FAC 33-34. Since Claim Two is based on the origination, processing, and servicing of the mortgage loan, it is preempted and dismissed. This claim is clearly within the bounds of HOLA as discussed above.

Plaintiffs' negligence claims are based upon allegations that Wells Fargo took actions against the Plaintiffs when they had no legal authority to do so. FAC 34-35. This claim is clearly within the bounds of HOLA as discussed above. Since Claim Three is based on the origination, processing, and servicing of the mortgage loan, it is preempted and dismissed.

Plaintiffs' Fifth Cause of Action alleges a violation of California Business and

13cv133

Professions Code Section 17200 *et seq*. FAC 37. This claim is founded upon Plaintiffs' repeated allegations that Wells Fargo lacked the authority to demand payments and foreclose upon Plaintiffs' home. FAC 37-40. Specifically, Plaintiffs contend that Wells Fargo sought the Plaintiffs' property through the threat of loss of their home, and engaged in "unfair, unlawful, extortive, and fraudulent business practices with respect to mortgage loan servicing and related matters" FAC at ¶ 102. This claim is clearly within the bounds of HOLA as discussed above. *C.f.*, *Silvas*, 514 F.3d 1001, 1006 (finding that section 17200 and 17500 claims regarding misrepresentations in advertising and other documents were preempted because it was based on disclosures and advertising, bringing it within § 560.2). Since Claim Five is based on the origination, processing, and servicing of the mortgage loan, it is preempted and dismissed.

Plaintiffs' First Cause of Action requests declaratory relief. FAC 29. The failure of the complaint as a whole demonstrates the absence of an actual controversy subject to declaratory relief. *Winding* at 11. A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir.1981). In the absence of a viable claim, the complaint fails to support declaratory relief. *Winding* at 11. As Plaintiffs lack a viable claim, declaratory relief is denied for the alleged violations of state law.

Plaintiffs' Sixth Cause of Action is a request for a Accounting. FAC 42. Plaintiffs claim that Wells Fargo has a fiduciary duty to account for payments made by Plaintiffs. *Id.* This claim is founded upon the allegation that Wells Fargo lacked the authority to demand mortgage payments. *Id.* This state law claim is clearly within the scope of HOLA, as discussed above. Since Claim Six is based on the origination, processing, and servicing of the mortgage loan, it is preempted and dismissed. Additionally, a claim for an accounting does not lie where there is an adequate remedy at law, or all the facts necessary for the calculation of the amount are alleged or within

the plaintiff's knowledge. *James Church v. Super. Ct.*, 135 Cal. App. 2d 352, 359 (1955). As Plaintiffs merely appear to be seeking the return of the money they paid to Wells Fargo, and there is no indication in the FAC that the payment terms were unusual, Plaintiffs fail to show that this claim is merited. *See Kazovsky v. Metrocities Mortg., LLC*, No. CV 11-6079, 2012 WL 177333 (C.D. Cal. Jan. 23, 2012).

Plaintiffs' Seventh Cause of Action is a request for Cancellation of Instruments based upon the allegation that Wells Fargo "has and had no right, title, or interest in the relevant Note and Deed of Trust such that it could enjoy any of the benefits provided under said contracts." FAC at 42. This claim is clearly within the bounds of HOLA as discussed above. Since Claim Seven is based on the origination, processing, and servicing of the mortgage loan, it is preempted and dismissed.

Claims Eight and Nine requests that this Court quiet title and set aside the sale of the property to Colfin on the basis that Wells Fargo lacked the authority to exercise the power of sale and foreclose upon Plaintiffs' home. These claims for relief are within the bounds of HOLA, as discussed above.

**C. Plaintiffs' Fair Debt Collection Practices Act Claim Fails to Allege Facts Sufficient to State a Claim**

Plaintiffs also assert a federal law claim under 15 U.S.C. § 1692 *et seq*, alleging violations of the Fair Debt Collection Practices Act (FDCPA). "The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207-08 (9th Cir. 2013).

Plaintiffs' Amended Complaint asserts that Wells Fargo "is one of the largest debt collectors in the United States," that a "large part of its business is the collection of debt for third parties," and it regularly acts as a trustee in the collection of securitized trusts. FAC at ¶ 95(a). Plaintiffs claim that Wells Fargo acted in violation

of the statute while collecting on Plaintiffs' debt obligation, which Plaintiffs claim was actually owed to another. FAC at ¶ 95.

Plaintiffs' allegations under FDCPA are premised upon their claim that Wells Fargo did not own the debt because World Savings Bank sold the note and deed of trust to an unknown party. It is therefore necessary to test the sufficiency of Plaintiffs' allegations that Wells Fargo did not have an interest in the note or the deed of trust.

As generally stated above, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 556-57. To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this court must accept as true well-pleaded factual allegations, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiffs state that they "allege, believe, and thereon allege that on or around the time of origination of Plaintiffs' loan, [World Savings Bank] sold their loan to another entity or entities," and that the entity was not Wells Fargo or an "Unknown Trust" for whom Wells Fargo acts as trustee. FAC at ¶ 29. They further "allege on information and belief" that World Savings Bank "never sold, transferred, or granted the Note or Mortgage to the Sponsor or Depositor of The Unknown Trust, [Wells Fargo], or any predecessor in interest of [Wells Fargo] and that [Wells Fargo] is merely a third-party stranger to the loan transaction." *Id.* at ¶ 30.

Plaintiffs also allege that the Defendants cannot show that the mortgage note was properly transferred to Wells Fargo or the "Unknown Trust," *id.* at ¶ 31, that Wells Fargo has not been able to provide evidence to verify that it owns the debt, *id.* at ¶ 32, and that Plaintiffs are unaware of any purported assignment of the Note and Deed of Trust into the "Unknown Trust," *id.* at ¶ 33. Plaintiffs therefore claim that Wells Fargo

thus does not have any interest in the Note or Deed of Trust. *Id.* at ¶ 35. Plaintiffs also challenge the "Substitution of Trustee" document, claiming that the individual who executed the document signs thousands of documents without any authority, and never held the title he purported to hold on the "Substitution." *Id.* at ¶ 44-46.

> Plaintiffs generally state that their "information and belief" is based upon:
>
> (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Substitution of Trustee"; 5) [sic] and a audit of multiple filings with the Securities and Exchange Commission ("SEC"), including multiple prospectus and Pooling and Servicing Agreements ("PSA") related to [Wells Fargo] Securitization Trusts.

*Id.* at ¶ 24.

This Court finds that these allegations are insufficient to raise a plausible claim that Wells Fargo did not own the note. Plaintiffs' claims that their mortgage was sold to an unknown entity, and not transferred to Wells Fargo or a trust for which Wells Fargo acts as trustee, lack the necessary factual support. Plaintiffs do not make any factual allegations, plausible or otherwise, that affirmatively support its contention that a transfer to another entity did occur. For instance, there is no allegation that any documents or statements by Wells Fargo employees support the existence of the sale. Alleged instances of misconduct regarding foreclosures in other cases may generally make misconduct by Wells Fargo more plausible, but they do not provide any support for an alleged sale or misconduct in the case of Plaintiff's home. *See id.* at 9 n.4, 13 n.6, 16 n.8. Plaintiffs' provide no basis for this court to conclude that the alleged sale is anything but speculation on the part of the Plaintiffs.

Plaintiffs do suggest that the lack of evidence for a proper assignment to a trust is evidence that a sale to an unknown third party did take place. *Id.* at ¶ 34-35. At the outset, it is not clear to this Court that an argument that the note was *not* properly transferred to a trust is sufficient to support an argument that is *was* transferred to a completely separate unknown entity. Additionally, a claim that Wells Fargo will not

be able to prove the transfer, and has not verified the transfer to the satisfaction of the Plaintiffs is not enough to generate more than a "sheer possibility" that there was no transfer. *See Iqbal*, 556 U.S. at 678. This is particularly true where California law does not require Wells Fargo to demonstrate title to foreclose, only to comply with California's nonjudicial foreclosure statutes. *Hague v. Wells Fargo Bank, N.A.*, No. C11-02366 TEH, 2011 WL 3360026, at *3 (N.D. Cal. Aug. 2, 2011).

Plaintiffs do not provide sufficient factual allegations, taken as true, to support a plausible claim for relief. This Court therefore **DISMISSES** Claim Four with leave to amend. This Court notes that FDCPA provides for a damages remedy, but that the statute is not a basis for injunctive or declaratory relief. § 1692(k); *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d. Cir. 2004); *Taylor v. Quall*, 471 F.Supp.2d 1053, 1059 (C.D. Cal. 2007); *Palmer v. Stassinos*, 233 F.R.D. 546, 552 (N.D. Cal.2006). To the extent that Plaintiffs' other claims seek declaratory and injunctive relief on the basis of FDCPA violations, amendment would be futile.

## V. CONCLUSION

Upon full consideration of the briefs submitted, this Court **GRANTS** Colfin's Motion to Dismiss and **GRANTS** Wells Fargo's Motion to Dismiss. Claims One through Three and Five through Nine are therefore **DISMISSED WITH PREJUDICE**. Claim Four is **DISMISSED WITHOUT PREJUDICE** and Plaintiff is granted leave to amend.

**IT IS SO ORDERED.**

Dated: October 22, 2013

HON. ROGER T. BENITEZ
United States District Judge